And we call the next case please. Council. Morning, Your Honors, please report. Council. My name is Mario Clatus. I'm an assistant appellate defender with the Office of the State Appellate Mr. Frederickson is a convicted sex offender who was required to register with law enforcement under the Sex Offender Registration Act. The state indicted Mr. Frederickson for violating the act, alleging that he knowingly failed to report weekly to the police chief where he was located and informed the police of his last place of residence. The trial court found Mr. Frederickson guilty of failing to register and sentenced him to two years, six months in the Department of Corrections, which he already served. On appeal, Mr. Frederickson raised three issues, two of which the state contests. First, that the state did not prove him guilty beyond a reasonable doubt of failing to register because it did not prove he failed to report weekly to the police chief where he was located. Second, that the act is unconstitutional, as applied to Frederickson, because it violated the Eighth and Fourteenth Amendments. The briefs in this case covered a lot of ground, but today I would like to focus on the first issue, whether the state could prove its case beyond a reasonable doubt. Of course, I'm happy to answer the court's questions, if there are any questions about the constitutional issue. Your Honors, this case arose because, rightly or wrongly, Mr. Frederickson felt mistreated by the Joliet police. He apparently decided to leave Joliet because of this perceived mistreatment. The act allowed him to leave Joliet, but the police in this case did not. The Sex Offender Registration Act specifies when and where offenders must register, as well as the information they are to provide when they do register. The procedures vary depending on whether the offender has a fixed residence. Under the act, a fixed residence is any and all places an offender resides five or more days in a calendar year. Offenders who lack a fixed residence must report weekly to the police chief or sheriff where they are located. The act does not define the term where they are located, but law enforcement agencies appear to interpret the term as the jurisdiction in which the offender resides. At the weekly reporting, the act requires offenders who lack a fixed residence to provide the police with information about where they stayed the previous seven days, as well as current employment information, and also information about their offense. So they report where they're homeless? Basically, that is how the law enforcement agencies interpret it. And there's a good reason to do that. The purpose of the act is to monitor the locations of sex offenders so that if we need to find them, or if we have any concerns, we can locate them quickly. They're most likely to be found where they live. So it makes sense to have them report where they're living. In Fredrickson's case, the indictment alleged that he was located in Joliet, and that he failed to report weekly to the police chief on March 2nd, 2011, and to inform the police of his last place of residence. To prove Fredrickson guilty under the act, the state had to prove beyond a reasonable doubt, therefore, that he was located in Joliet the week of March 2nd, 2011. The state did not prove this. The state introduced no evidence that Fredrickson resided in Joliet the week of March 2nd. That is, no evidence he resided there between February 23rd and March 2nd, that he was there all the time, or that he was staying there in Joliet. Instead, the state's evidence tended to show that Fredrickson had registered in Joliet in the past. Under the statute, though, this isn't proof that he's living in a jurisdiction. The state also tried to prove its case with evidence that Fredrickson was physically present in Joliet on March 2nd and March 3rd. The problem is the act doesn't require him to register where he's physically present. It requires him to report where he's located. Additionally, the Bolingbroke police on February 23rd refused to register Fredrickson even though he was physically present there. Furthermore, the record indicates that Fredrickson may have continued to work in Joliet during the week of March 2nd. Under the act, though, this isn't proof that he's living in a jurisdiction. The act very explicitly contemplates that offenders will live in one jurisdiction and work in another. You can prove this by circumstantial evidence. Sure. For example, in cases where the offender has a fixed residence and the state wants to prove that, evidence that he's there a lot, every day, all the time, or that he's staying there, that's enough to prove the offender has a fixed residence in a jurisdiction. So in this case, he lacks a fixed residence. The act contemplates that they'll live in different places and work in different places. It very clearly does not require them to report weekly where they work, only where they're located. In the past, he voluntarily reached in Joliet. Yes, because he apparently was living there, yes, between 50 and 100 times before 2011 or so. And they also have him present in Joliet. Physically present, yes, in Joliet. Again, the record's not very clear about where everything was happening, but there was evidence that he may have continued to work in Joliet that week. There was evidence, on the other hand, that Frederickson was located in Bolingbrook. He reported there on February 9, 2011, and told the registering officer he might stay there because he was trying to make his way to Brookfield for a job he was hoping to get. Frederickson testified that he reported in Joliet on February 16, 2011, because he was afraid he wouldn't be able to get a ride back to Bolingbrook that day. He reported in Bolingbrook again on February 23, but a detective with the Bolingbrook Police Department refused to register him. This refusal on the 23rd was improper. I mean, first, the detective's testimony at trial indicated that Frederickson told him he was homeless in Bolingbrook on that date. This is enough under the Act to establish where he's located. This had been enough previously in the weeks leading up to February 23. However, the state's evidence showed that Frederickson's three most recent registrations, his address is listed as homeless, and the city is just whatever jurisdiction he's registering in. The police had not previously required more from him, and the Act doesn't require more than that. Second, Frederickson didn't fail to provide anything the Act required to the police on the 23rd, such as where he worked or information about his offense. Despite this, the police in Bolingbrook on the 23rd refused to register him, and they told him to go back to Joliet because he allegedly wouldn't provide information the Act didn't require. Specifically, the police in Bolingbrook on the 23rd wanted to know which vacant lot Frederickson was going to be sleeping in, which bus stop, or possibly which homeless shelter, although the officer who dealt with him that day knew there were no homeless shelters in Bolingbrook. The Act simply doesn't require this type of information from offenders who lack a fixed residence. On appeal, the state argues that the Act did require Frederickson, an offender who lacked a fixed residence, to provide documentation that substantiated proof of residence. However, it's not clear what an offender who lacks a fixed residence can show in this regard. I mean, for example, if the police think he's sleeping at bus stops, I don't know what kind of documentation I'll be able to show that shows he's residing at a bus stop or a vacant lot. Furthermore, the Act simply doesn't require this level of specificity from offenders who lack a fixed residence. These are people who cannot predict where they're going to be staying. That's the whole reason they're required to report weekly. If they could predict where they were going to be staying, they could avoid the weekly reporting requirement altogether by just reporting whatever address they'll be staying at five or more days in the calendar year. And this is also why the Act requires these types of offenders to report where they've been the previous seven days. It's how we amass information about where they've been and where they're likely to be in the future. Unappealed Estate also argues that the issue in Frederickson's case is that he was not registered anywhere on March 2nd and that what happened in Bolingbrook on the 23rd is irrelevant. However, Frederickson's registration stopped being current as of February 24th. That's the day after the police in Bolingbrook refused to register him. There's nothing legally significant about March 2nd or Joliet unless we assume a couple things. First, for March 2nd to be significant, we have to assume that his most recent registration was February 23rd. The state argues that he was properly denied that day, but he wasn't. Again, he provided everything the statute required to the Bolingbrook police. They refused to register him because they suspected he didn't live in Bolingbrook. If they suspected he didn't live in Bolingbrook, they should have investigated it. By refusing to register him that day, the state essentially lost access to whatever information they needed from him about the previous seven days where he was staying. That's essentially the whole purpose of the Act is to monitor their locations through that information. Second, as far as March 2nd goes, I'm sorry, as far as Joliet goes, Joliet can only be significant here legally under the Act if he's living in Joliet. The state offered no evidence that he was living in Joliet. Just a suspicion on the part of the Joliet police officers that he was residing there. That's not enough under the Act. Also, if he's not living in Joliet on March 2nd, so he goes to Bolingbrook on the 23rd, he tries to register, they refuse to register him. The Act does not require him to go back to Joliet or anywhere else unless he's living in that other jurisdiction. The state has to provide some evidence that he's doing that beyond his physical presence there a few times that week or that he's employed there possibly. As I said earlier, this case arose because Fredrickson wanted to leave Joliet. Regardless of whether it was reasonable for him to think the police were mistreating him in Joliet, the statute allowed him to leave. It allowed him to change jurisdictions and the police were not free to interfere with that. Fredrickson went to Bolingbrook and the police there wrongly refused to register him on the 23rd, setting in motion the chain of events that culminated with his arrest in Joliet the following week. Under the circumstances, the state failed to prove beyond a reasonable doubt that he was located in Joliet for the purposes of the Sex Offender Registration Act. We respectfully ask this court to reverse this conviction. Thank you. A question about an issue that you didn't address. Yes. The cost issue. The cost issue. Are you referring to the $100 annual fee? No. Oh, I'm sorry. That's an interesting issue, too. Okay, I'm sorry. The $500 sex offender registration fee that's issue number three. Hopefully I'm reading the right brief. Yes. The sex crime is fine. The sex crime is fine. Okay, yes. Yes, Your Honor. You didn't write the brief? No, I did not. So you're at a bit of a handicap? I shouldn't be over issues that are in the opening brief, but please, if I have to answer your question. Okay. You know what? I'll just... I guess my question is, the brief written by Ms. May assumes that the court committed an error, a type of grammatical error. Is it starting to ring a bell with you? Sort of, yes. And she says, well, instead of the $200 DNA analysis fee, the court filled in a $500 DNA analysis fee. Okay. So, therefore, the court must have really intended to order this mandatory fine rather than that mandatory fee. Okay. My point is twofold. First, I know you didn't write the brief, and I don't see Mr. Carasone in the courtroom, but I just want to say that when Ms. May writes at page 43 of the brief that the court also ordered defendant to pay among costs a sex crimes fine and then cites the statute, I can't find an order in the record. Okay. What's in the record is a cost sheet prepared by a clerk. Yes. And that cost sheet bears a date showing that it was last revised in 2007. Yes. And so this is not to scold you, but maybe to just the cost issues are taking a lot of time. Yes, yes. A lot of time. Yes. And the revised cost sheet prepared by the circuit clerk is dated 2007. The mandatory sex crime fee didn't go into effect until 2008. So my concern is the court really did intend to order a $500 DNA analysis fee because before 2004 the DNA analysis fee was $500 pursuant to the statute that is cited in the clerk's cost sheet. Yes. So what I really think is happening here is the clerk's cost sheet is very outdated. Yes. And it is probably not fair to speculate what the judge intended to order, and the best course may be to remand it and let the judge order it. But what troubles me a bit, and I'm just being instructive here, is don't tell us that the court ordered that fee when we don't have an order showing it. Yes. And hopefully Mr. Carasono will listen to the argument and understand that I'm on a soapbox. But there's a lot of cost issues that are based on speculation that are conceded by the state without much thought that are taking up a lot of the time. I apologize for that, Your Honor. You don't have to. You don't have to. Thank you. Is there any other questions? Nope. Okay. Thank you. Mr. Moskow. Police Court. You're welcome. As a preliminary matter, I'm going to refer to the Sex Offender Registration Act of SORA and the Joliet Police Department as JPD, just in the interest of brevity. A defendant was charged with a failure to register as a sex offender on the date of March 2, 2011, and he was convicted of that particular crime. The people had to show two elements, that the defendant was a sex offender and that he knowingly failed to register. Regarding the first element, the people entered into evidence a certified abstract of the defendant's conviction for a sex offense, and that, of course, required him to register under SORA. Regarding the second element, the people entered into evidence exhibits that showed the defendant had registered in Joliet on February 2, 2011, registered in Bolingbrook on February 9, 2011, and he registered in Joliet on February 16, 2011. Because he was homeless, of course, pursuant to SORA, he had to register weekly. The defendant was charged only with failing to register on March 2, not on any other date. Detective Avila of the JPD testified that on March 2, the defendant appeared at the JPD on two separate occasions, but both times the defendant refused to register. Avila testified that on March 2, the defendant used a JPD lobby phone to make his first contact, and the defendant told Avila that he was at the JPD to turn himself in because he was out of compliance with his registration. At that time, Avila told the defendant that he would not enforce the noncompliance, but Avila would go ahead and register the defendant on March 2. The defendant refused to register, and he left the JPD at that time. Later, on the same day on March 2, the defendant again called Avila from the JPD lobby phone, and he demanded that his status be changed from noncompliant to compliant, and Avila told the defendant that he had to register, but the defendant refused to do so. He claimed that the state of Illinois was in default with him. Detective Landeros of the JPD is the officer who generally registers the sex offenders in Joliet, and Landeros testified that he had been registering in Joliet weekly. Landeros encountered the defendant on March 3, the day after he was supposed to register, and the defendant told Landeros that he had not registered on March 2. Landeros checked the leads, and he found that the defendant had not registered anywhere on March 2. Landeros found that the last time the defendant had registered was on February 16. The record shows that the people proved the two required elements of the crime the defendant was charged with. First, that he is a sex offender, and second, that the defendant knowingly failed to register on March 2, 2011. The people asked this court to affirm the defendant's conviction for failure to register as a sex offender, and to stand on their brief for all other argument. Well, so what about the incident in Bolingbroke? Had he registered in Bolingbroke on... On the 23rd? Yeah. He would not have been out of compliance on March 2, right? If he had... Correct. He would not have been out of compliance had he registered on the 23rd, but he was never charged with the 23rd. I got that. But if he... He says he tried to, and he wouldn't let him. Correct. That's really not the issue. That's not material to the charge at hand or the conviction, because on the 3rd, he was out of compliance for failing to register on the 2nd. Well, I get that, but I think the defendant's argument is that he would be in compliance. He tried to comply on February 23rd, and the police wouldn't let him. Ergo, if he had let him do what he came in and tried to do under the statute, then there would have been no need to register on March 2, because his week wouldn't be up yet. Well, the March 2 would have been his next weekly registration date. If he registered on the 23rd, a week later is March 2. He has to register again on the 2nd.  He knew he had to register. He was there. He chose not to register. And on the 3rd, he says, hey, I'm out of compliance. He tells Detective Landeros, I didn't register yesterday. So he knew he had to register. He was at the police department. He was in Joliet. It didn't matter if he was registering in Bolingbrook or Chicago or anywhere. He had to register weekly. He failed to register on that particular day, and he knew he had to register. Is there any authority for Will County... I don't know that there's any specific authority, but they choose to register their sex offenders on Wednesdays. Are they allowed to make that choice? I mean, if somebody shows up and says, I want to register, they say, come back on Wednesday? I have no knowledge of any authority that says they cannot choose a specific date. And that does certainly facilitate the weekly registration. Everyone knows when it is, where it is. Unless you just move to that town. Well, that would be true, Your Honor, but they would be informed presumably when they showed up for the first time to register that there's a specific date. And what about the fee that they charge? Do you think this was motivated at all by his desire to avoid that $100 fee per week? What fee was charged, ma'am? I think there was a fee you have to pay to register as a sex offender in one town. Oh, no. The town he went to, he didn't have to pay a fee. Respectfully, that's not correct. That's why we have oral arguments. He was not charged a fee. No one attempted to charge him a fee in Bolingbrook to register. Does Bolingbrook require a fee? No, no, they do not. That was part of what was in the record, is they do not require a fee. The only fee that's required of any sex offender, and it was not asked of a defendant in this case, was the $100 annual registration fee. All right. So Joliet Police Department was not charging a weekly fee? No, no, no. Okay. They did not. That's incorrect. Thank you. Any other questions? All right. Thank you. Thank you. Is there a rebuttal? Versus to the Wednesday registration? I might have the day of the week wrong. Well, in Joliet it was Wednesday. So not just only on Wednesdays, but only between the hours of 10 a.m. and noon. And this did create a problem in Fredrickson's case, because on the 23rd he goes. He's been reporting every Wednesday for a long time. On the 23rd he goes to Bolingbrook, because under the statute he's allowed to go to Bolingbrook, he's allowed to move. Tries to register, they don't let him. The next day he's out of status. Not on March 2nd. The very next day is when he stops being compliant. The problem is, as he testified, he can't register in Joliet, where he's ordered to go, until the following Wednesday. So on the 24th he can't register. On the 25th he can't register. He apparently tried to go there on the 1st, and he couldn't register, because they don't do that on Tuesdays, only on Wednesdays. But the more important thing to note is that the act doesn't require him to leave the jurisdiction where he's located if the police there refuse to register him. It simply doesn't. Now, on the other hand, if the police in that jurisdiction refuse to register him, he doesn't get a lifetime pass that says, okay, now you never have to register, as long as you don't leave this jurisdiction. But that isn't what we have here. Here we've got someone who shows up on Wednesday, like normal, to register. He gets denied. He goes to the police where he's told to go. Now, I'm not arguing that when he shows up on the 2nd and talks to the officer over the phone, I'm not arguing that's sufficient under the act. But there's no evidence here that we're talking about someone who's trying to, you know, go off the grid and avoid his weekly reporting requirements. We're talking about someone who was trying to avoid, apparently, dealing with a specific police officer in Joliet. And under the act, that's okay. As long as he's trying to comply with the act, as long as he goes somewhere to report, he's not required to report at a particular jurisdiction with a particular officer, except to the extent that he doesn't. He doesn't get to choose which officer on the police department he's going to report. You know, I don't want that one. You can get me somebody nicer. He doesn't get to choose, except to the extent that he relocates. If he decides, I don't like dealing with this police officer, I have a personal conflict with him, he can move. Fredrickson can move. Any sex offender can leave the jurisdiction where they're at and register somewhere else. Well, I mean, Joliet and Bolingbroke are like a nine iron, right? And you can see somebody going back and forth between if you're a homeless person. Still, if he shows up there to not register because he finds this particular officer who's assigned to register sex offenders, it's not very objectionable for whatever reason. I'm sorry. What I'm saying is that they did, Joliet, the evidence was they tried to register him. They offered him to register and he would have none of it. The key thing to note about that is even if Fredrickson had registered on the second with whoever offered to register him, if he wasn't living there, that registration wouldn't have been valid under the act. That was the whole reason he was denied in Bolingbroke the week before, was because the police believed he didn't live there. So even if he had completed that registration on the second, if he hadn't changed jurisdictions, if he hadn't, to whatever extent he had belongings, there's some evidence in the record that he owned some tools and so on, if he wasn't residing in Joliet on March 2nd, and he reported there, he would not be complying with the terms of the act as interpreted by law enforcement. And again, there's reason to think that's not an unreasonable interpretation. Let me ask a question. If you assume that when he attempted to register on the 23rd, that's counted as a registration. When's the next day? March 2nd. He has to register again on March 2nd? On March 2nd. Where did he register on March 2nd? He didn't register. The evidence says he didn't register anywhere on March 2nd. And he was given a chance by the police in Joliet to register, but he refused to do that? Yes. And he didn't register anywhere else? No. And he didn't try to register in Bolingbroke on March 2nd? I don't know that we can say that from the record. Detective Talbot testified that he dealt with him on the 23rd. I don't know that we can say that. And again, if he goes to the police on the 23rd, gives them everything the act requires, and they say we're not going to register you, I don't know what he's supposed to do in that situation. The act doesn't require him to leave. Well, they said it's not a lifetime pass. No. They don't register him one day. He just can't. He's got to try to register somewhere the next week, doesn't he? If he leaves Bolingbroke, absolutely. He has to register in whatever jurisdiction he's living in. But even if he stays in Bolingbroke, he's got to go back and try. It's a weekly registration. So he would go back to Bolingbroke and provide them the same information and then I guess. I'm not sure what. If he stays in Bolingbroke, he just never has to go back. No, again, again, at some point it's going to become unreasonable. Where's that point? I don't know. But at this point, we've got him showing up somewhere every seven days at least. Again, we're not talking about someone who just decided, I'm not going to show up anywhere. I'm not going to try to do this. As I said, I'm being very simplistic about this, but if we assume that he made an attempt on the 23rd and that's accepted as not a legal attempt. On the second, he had to register someplace, wherever he was. He refused to register in Joliet, and so then there was a trial. They introduced circumstantial evidence that he had registered in Joliet before, and they had introduced evidence that he was present in Will County in Joliet. Yes. Okay. And there was no evidence introduced that he registered. There was no defense that he registered someplace else. So was the burden of proof met? I don't believe it was, Your Honor. Again, if we were talking about someone with a fixed residence, the state couldn't go into court and say, well, someone saw him standing on a street corner in this jurisdiction, therefore he had a fixed residence there. I know, but they've got more than that. They've got the fact that he voluntarily registered himself there. In the past. In the past, not the week for which he was arrested. Exactly, but in the past. I mean, but his most recent registration, his most recent valid registration was February 16th. His most recent registration attempt was in Bolingbrook. There's no evidence he ever left Bolingbrook, that he moved away from Bolingbrook. I think the state has to offer more than the suspicion he's residing in Joliet. Again, the Act itself, first, the plain language of the Act does not require him to leave the jurisdiction where he lives to shop around and find an agency that will register him. Second, the purpose of the Act is severely frustrated when officers refuse to register people who show up and provide the information the Act requires, which is what happened in this case. Had the police in Bolingbrook registered him as it was required to do, and as was proper under the Act on the 23rd, we don't know what would have happened, but Frederickson definitely was not required to leave Bolingbrook by the Act when the police refused him, nor was he required to travel around the state of Illinois. I agree with you on that, but none of those are questions in front of us. The only question in front of us is on March 2nd. If a police officer pulls over and sees a dead body laying there and a guy walks up to him and says, I killed that guy. Is that evidence that he killed the guy? I believe it's evidence that he killed the guy. Your client went up and told the police officer, I'm out of compliance. Is that evidence? Again, he's got a report. Under the statute, he has to report where he's located. That's what he has to do. He's not required by the Act to shop around until someone's willing to register him. What would be the answer to my question? If he walks up to a police officer and says, I'm out of compliance, is that some evidence that he killed the guy? If we want to rely on sex offenders to interpret this Act, I suppose it's evidence that he's out of compliance with the Act. I'm not asking if it's conclusive. I'm asking if it's evidence coupled with his knowledge that he wasn't compliant. I suppose it's evidence that, again, Fredrickson knew as of the 24th that he was out of status. He goes to the police department where he's told to go, in a place he might not be living because he was told by the police to go there. Again, if he goes there on the 2nd and he agrees with Detective Avila to be registered, he could still be violating the Act. He could still be prosecuted under the Act, and he could still be convicted under the Act of failing to register where he was located. The state had to prove that he was located in Joliet, and they never did. Anybody else? Thank you. Okay, counsel, thank you. Thank you both for your arguments here this morning. This matter will be taken under advisement and a written disposition. It will be forthcoming. We'll be in a brief recess for a panel change before the next case.